127 So.2d 380

**Ellie ODEN**

v.

**STATE.**

8 Div. 725.

Court of Appeals of Alabama.

Jan. 17, 1961.

Rehearing Denied Feb. 15, 1961.

Breland & Doss, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and Dwight W. Bradley, Asst. Atty. Gen., for the State.

CATES, Judge.

This is an appeal from a judgment upon a verdict finding Mr. Oden guilty of distilling or making alcoholic liquors. The jury expressly acquitted Oden on count 2 of the indictment which charged possession of a still. The trial judge sentenced him to eighteen months in the penitentiary.

From Oden's brief we excerpt:

On January 23, 1959, A. T. U. agents, Troy Hamner and Jarvis Brewer, Morgan County Deputies, Wilbur Abercrombie and Loyd Wallace, were on the property belonging to Oden from about nine o'clock in the morning until about eight o'clock that night.

The officers testified that they were at various spots on the defendant's farm, a 495-acre tract of land, during the day. Around eleven o'clock in the morning, they saw defendant going to his mail box in a car with his wife. He was again seen by them feeding his hogs around the middle of the afternoon, and also working on some water pipes around his house.

The Attorney General continues the narrative thus:

Mr. Hamner then testified that he saw a still on the property located about a quarter of a mile south of Oden's house in a cane thicket on the bank of a stream. It was a tank type, approximately four feet wide, and would hold about 588 gallons. On January 23, 1959, he saw approximately 527 gallons of mash or beer in the still; that the beer in the still contained alcohol. He saw Oden go to, or near, the still at about 5:20 p. m.

Hamner was, at this time, located across the stream from the still and was viewing the appellant through field glasses. At about 5:20 p. m. he heard a rustling in the cane brake and could see a man moving around the still. The man, wearing blue denim trousers, an "Ike" jacket, and a greasy red leather cap, came across the creek to within ten yards of Hamner and began to pick up wood.

Using the wood he had picked up, he started a fire under the still, put a piece of tin over the furnace and walked back through the pasture to the barn. The man he saw at the still was later identified to him as the appellant.

Agent Brewer called to Hamner and told him that they had arrested the appellant, who, when Hamner next saw him, was in custody and wore the same clothing that the man he saw at the still had worn.

A deputy sheriff related (after testifying as to the requisite predicate of voluntariness) that after his arrest Oden told the officers:

"I carried the sugar down there. If you hadn't caught me this time you wouldn't have caught me and I just carried it for another fellow because the water was up and he would have so far to go around. * * * You could make this light on me and let me pay it off."

Appellant, in his brief, argues three points: (1) that the verdict was (a) coerced and (b) a compromise; (2) that, inasmuch as the forms of verdict suggested by the trial judge did not include any form as to count 1, there was error in receiving the verdict of the jury which expressly found Oden guilty under count 1 and not guilty under count 2; and (3) the refusal of requested written charge 35 was error.

[1] We have considered the record as to what is alleged to constitute the coercion. It would seem that the court finished charging the jury about noon and instructed the jurors to go to lunch and return at 1:30. The record is silent until an entry of 5:15 p. m. in which we find the court asked the foreman if the jury had reached a verdict, to which the foreman answered, "Judge, I regret to say we have not."

The court then asked if they would like to go for supper and come back at 6:30 or 7:00 in the evening, to which the foreman replied, "I am afraid it is hopeless." Thereupon the judge stated he was sorry to hear it because he was not willing to release the jury at that time. The instruction on trying to deliberate covers some four pages of the transcript. No objection or exception appears even within the liberal rule of Gidley v. State, 19 Ala.App. 113, 95 So. 330.

It is our conclusion that there is nothing that we consider improper on the part of the judge within the scope of the principle which led to reversal in Orr v. State, 40 Ala.App. 45, 111 So.2d 627, affirmed 269 Ala. 176, 111 So.2d 639.

█ The claim of compromise verdict is as follows:

A still was operating; all that the State showed was that Oden was there. But since Oden denied both being around the still and owning it, he argues the choice of fact finding was that he was guilty under both counts or none; the verdict of guilt of count 1 and acquittal under count 2 would never have come about had it not been for the trial judge's hurrying the jury.

While this contention might carry some force in argument to a jury, it does not find support in law under the record here. *First,* as the foreman of the jury in the instant case asked, "Can't a man make whiskey on somebody else's still?" *Second,* no objection or exception was taken to the form of the verdict at the time of its return.

On review we cannot treat the two counts as charging an indivisible crime or even yoked offenses. Thus, one can be a worker, i. e., an aider and abettor, in making an alcoholic beverage without the evidence needing to show that he has actual or constructive possession of the apparatus. There is no error here because of conviction under one count and acquittal under the other.

█ As to the second point, we set forth the pertinent parts of the court's oral charge with respect to the form of verdict:

"* * * and the law is, 'any person, firm or corporation who shall within this State distill, make or manufacture any alcoholic, *spiritous,* malted, or mixed liquors or beverages, any part of which is alcohol, shall be guilty of a felony.' That is the first charge made in this indictment. Under the law of Alabama, gentlemen, *if you believe from the evidence, beyond a reasonable doubt and to a moral certainty,* that the defendant had beer or beer mash in a still and that it contained alcohol and that if you further believe from the evidence that the defendant made that beer or beer mash, his acts in so doing would come within the statute which prohibits the distilling, making or manufacturing any alcoholic, spirituous, malted or mixed liquors or beverages, any part of which is alcohol and the terms of this statute are violated if such liquor or beverage so made or manufactured contained alcohol even though such liquor or beverage was not made by the process of distilling.

*    *    *    *    *    *

"Gentlemen, the second part of the charge is possessing a still. * * *

*    *    *    *    *    *

"Now, gentlemen, if after a consideration of all the evidence, you believe from all of it the State has met the burden of proof cast upon it and that the

defendant is guilty of the charges in the indictment, then you should find the defendant guilty, and in that event the form of your verdict would be:

"We, the jury, find the defendant guilty as charged in the indictment.

"However, if, after considering all the evidence, the State has not met the burden of proof and not satisfied you beyond a reasonable doubt of the defendant's guilt of the charge of manufacturing as found in Count 1 of the indictment or the first count of the indictment, but has satisfied you beyond a reasonable doubt of the defendant's guilt of possessing a still as found in Count 2 of the indictment, then you should find the defendant guilty of that charge, and in that event the form of your verdict would be:

"We, the jury, find the defendant guilty as charged in Count 2 of the indictment.

"If, however, after carefully considering all the evidence in the case, the State has not met the burden of, proof to satisfy you beyond a reasonable doubt of the defendant's guilt and to a moral certainty, then the defendant would be entitled to an acquittal at your hands. In this event the form of your verdict would be:

"We, the jury, find the defendant not guilty." (Italics added.)

Our cases perhaps encourage written verdicts for the sake of accuracy and to avoid delays incident to corrections. Allen v. State, 52 Ala. 391; Edwards v. State, 205 Ala. 160, 87 So. 179. But a court which receives an oral verdict is not in error if the verdict is otherwise proper. State v. Underwood, 2 Ala. 744; Pate v. State, 19 Ala. App. 548, 98 So. 819.

Therefore, it would seem permissible to deduce that a trial judge who fails to give verbatim texts of the various possible verdicts under the indictment and evidence will not therefor be held to have erred.

Considering the oral charge, we conclude the court below covered the elements of the offenses and the burden on the State under both counts. Accordingly, opinions as to the jury taking the law of the case (such as Booth v. S. & H. Laboratories, Inc., 39 Ala.App. 615, 105 So.2d 879) do not affect the verdict in this case.

█ Oden, in his brief, claims that charge 35, which is substantially the same as charge 8 in Lockett v. State, 40 Ala.App. 427, 117 So.2d 155, should have been given. See Jones, Alabama Jury Instructions, § 7101. The Attorney General correctly says that there was no reversible error in refusing this charge because the court's oral charge amply covered the problem of the burden of proof, reasonable doubt and presumption of innocence. Furthermore, the trial judge gave a number of the written charges requested by Oden, of which, notably, numbers 42 and 59 covered substantially the same point of law.

We have carefully considered the entire record as required by Code 1940, T. 15, § 389, and consider that the judgment below is due to be

Affirmed.

## On Rehearing

Oden, in his brief for rehearing, urges:

"We do not insist upon the fact that the verdict as received by the Court has to be in writing, nor do we insist... upon the fact that it is mandatory for the Trial Judge to give instructions to the Jury as to the possible verdicts. We have not contended in our original brief nor in this brief that the Judge was in anywise in error in undertaking to explain the elements of the various offenses. * * * once, however, the instructions are given * * * the jury should obey the instructions of the

Court even though these instructions be erroneous * * *

"* * * We contend that once the Jury is given the possible verdicts, that these possibilities are based upon the evidence just as all the other portions of the instructions, and that such instructions spring from the evidence and are just as much a part of the 'theory of the Law as charged by the Judge,' as are any other portions of the instructions."

To support this contention, he cites the following cases: Fleming & Hines v. Louisville & Nashville R. Co., 148 Ala. 527, 41 So. 683; New Hampshire Fire Ins. Co. v. Curtis, 264 Ala. 137, 85 So.2d 441; Salter v. Turner, 24 Ala.App. 67, 130 So. 163; Hagan v. State, 25 Ala.App. 33, 140 So. 185; and Booth v. S. & H. Laboratories, Inc., 39 Ala.App. 615, 105 So.2d 879.

■ From the last of these opinions we take: "A verdict contrary to the law as contained in an instruction by the court will be set aside, whether the instruction be right or wrong."

Code 1940, T. 7, § 270, provides, in part:

"The court may state to the jury the law of the case * * *"

In the instant case, if we were to concede that the failure to give a form of verdict of guilt of distilling (contra formam statuti, T. 29, § 103) was error, nevertheless, under the rule of Peterson v. State, 227 Ala. 361, 150 So. 156, no harm can be ascribed to the trial judge's omission of this formality because his attention was not called to this oversight.

■ Code 1940, T. 7, § 273, provides for the submission by either party of requested written charges to supply supposed omissions in the oral (or general) charge of the court. This request in writing is a condition precedent to putting a trial judge in error for whatever he may leave out of his instruction.

Application overruled.