214 So.2d 708

**Leroy HAYES**

**v.**

**STATE.**

**6 Div. 300.**

Court of Appeals of Alabama.

June 25, 1968.

Rehearing Denied Oct. 8, 1968.

Chas. Tartar, Tartar & Wininger, Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

The Grand Jury of Jefferson County, Alabama, returned a two count indictment charging appellant with (1) grand larceny and (2) buying, receiving and concealing stolen property. Appellant plead not guilty to the indictment and was tried by a jury.

We find set out in the record a stipulation of facts which states in part as follows:

"The jury entered the juryroom for their deliberation. Later that day, to-wit: March 7, 1967, the jury returned with a verdict. When they were asked by the Court if they had reached a verdict they answered, 'Yes, we have.' The foreman then read a verdict, saying 'We the jury find the defendant guilty of Grand Larceny as charged in the indictment' and fixed the value of the stolen property at $1600.00. *The jury was then discharged and they left the court-room.* After they had left the court-room, it was realized that the jury had returned two written verdicts against the defendant. Both written verdicts had been handed to the Judge. The verdicts were written out and signed by the foreman in accordance with the forms which had been provided for them.

"After it had been discovered that there were two verdicts, the court sent the bailiff to find the members of the jury. After some 15 or 20 minutes later, the bailiff returned with some of the jurors and others came in some few minutes later. The court lined the jury up at the railing and instructed them to go back into the juryroom and reconsider the case and come back with only one verdict. The court also informed them that they had come back with two verdicts, which was improper.

"Before the jury was sent back into the juryroom, the clerk of the court checked the names of the jurors who went back into the juryroom against his jury list, which he had used at the time of the initial striking of the jury. There were no further instructions given to the jurors, they had not been instructed to refrain from talking to one another about the case or talking to anyone else about the case and were not given any additional legal charges from the court.

"At the time of the initial verdict by the jury they were aligned at the railing and they handed to the bailiff Clyde Copeland three verdict forms which were provided them by the court. (1) One for Grand Larceny; (2) one for buying receiving or concealing stolen property and (3) one for not guilty. Two of the verdict forms were filled out and signed by the jury foreman, to-wit: one for Grand Larceny and one for buying receiving and concealing stolen property.

"Prior to the jury being sent back into the juryroom for deliberations, on the second occasion, the court had actually received the verdict before they were discharged. After they returned from their deliberations, the second time, they returned a written verdict stating that the defendant was guilty of Grand Larceny.

"Thereafter, the defendant was sentenced to five years in the penitentiary under the verdict of Grand Larceny issued by the jury on the second occasion." (Emphasis added.)

After the jury had been resummoned by the court to reconsider the case, appellant moved for a mistrial, which motion was overruled and to which appellant duly excepted.

■ There are numerous cases which support the principle that the jury may amend or cancel their verdict anytime prior to discharge. See Alabama Digest, Criminal Law, ☞889.

In the early case of St. Clair v. Caldwell and Riddle, 72 Ala. 527, the jury returned a verdict which was in improper form and which stated:

"We, the jury, find a verdict in favor of plaintiff Riddle, and value the mule at ninety dollars, and its service at fifteen dollars a year; total amount, one hundred and twenty dollars."

The next day the court asked the parties to the litigation if they would consent to the verdict being put in proper form and the defendant's attorney objected. Two days later, the jury was replaced in the box on motion of plaintiff's attorney and, after being charged by the court as to the proper form of the verdict, returned a second verdict. In reversing and remanding the case, the Supreme Court stated:

"Could the court, three days afterwards, reassemble the jury, and have them perfect their verdict? It would be a dangerous practice, and might lead to great abuse. Walters v. Junkins, 16 Serg. & R. 414 (16 Am.Dec. 585). No precedent for it has been produced or found. In the case of Brister v. The State, 26 Ala. 107, this court held that the jury, which amended its verdict in that case, *had never in fact been discharged or gone beyond the immediate continuous control of the court.* That case, then, is not an authority for the appellees. Waller v. The State, 40 Ala. 325, is strongly the other way. True, these were State cases; but, on the question we are considering, they tend strongly to put the Circuit Court in error in this case. The Circuit Court should have set the verdict aside, and awarded a venire de novo. Reversed and remanded." (Emphasis added.)

The *St. Clair* case, supra, was cited in Dover v. State, 75 Ala. 40, wherein the Supreme Court reversed and remanded appellant's conviction of murder. There, the jury, which had returned an insufficient verdict, been discharged and left the courtroom, was resummoned by the court and instructed to return a correct verdict.

In the instant case, the jury had been discharged after returning the first verdict and left the courtroom for a period of "some 15 or 20 minutes."

"It is the duty of the court, and the prosecuting officer, to look after its form and substance of verdict returned, as far as to prevent an unintelligible * * * or an insufficient verdict from passing into the records of the court. * * *"

Allen v. State, 52 Ala. 391. See also Bentley v. State, 20 Ala.App. 635, 104 So. 679.

■ When a jury has been discharged by the court and has left the courtroom so as to place themselves beyond the immediate, continuous control of the court, their connection with the case ceases to exist

**502**

and thereafter that case is beyond their control. Williams v. People, 44 Ill. 478, 50 C.J.S. Juries § 291; Dover v. State, supra; St. Clair v. Caldwell and Riddle, supra.

 We, therefore, conclude that once the jury has been discharged and left the court's control, they could not thereafter be resummoned in order to correct or amend a verdict which is insufficient in substance.

The judgment in this cause is due to be and the same is hereby reversed and the cause remanded.

Reversed and remanded.

### On Rehearing

PER CURIAM.

The Attorney General cites to us Oden v. State, 41 Ala.App. 212, 127 So.2d 380, wherein it is stated:

> "Our cases perhaps encourage written verdicts for the sake of accuracy and to avoid delays incident to corrections. Allen v. State, 52 Ala. 391; Edwards v. State, 205 Ala. 160, 87 So. 179. But a court which receives an oral verdict is not in error if the verdict is otherwise proper. State v. Underwood, 2 Ala. 744; Pate v. State, 19 Ala.App. 548, 98 So. 819."

The Attorney General submits that as the oral verdict rendered by the jury was a proper verdict, it alone would be sufficient to sustain the conviction and that the written verdict of buying, receiving and concealing stolen property was merely surplusage.

 It is of course the law, as cited by the Attorney General, that a verdict may be rendered ore tenus, *Oden*, supra; State v. Underwood, 2 Ala. 744. However to accept the Attorney General's reasoning would be, essence, giving oral verdicts precedence over written verdicts.

This court frowns upon unwritten verdicts. There is no reason in this day of literacy for a verdict not to be in writing,

and although the proposition may not appear as well founded in the light of the instant case, written verdicts are to be encouraged for the sake of accuracy and to avoid delays incident to corrections. *Oden*, supra.

To give a verdict ore tenus precedence over a written one would be, in our opinion, diametrically opposed to the preference of written verdicts over unwritten verdicts. For this reason, we therefore, must reject the Attorney General's reasoning.

 Although a verdict may be written or oral, where there is both a written and oral verdict, it is necessary that each be in accord with the other. If any inconsistence or ambiguity exists in the verdict, it must be corrected prior to the dismissal of the jury and failure to do so, as in the instant case, will result in a reversal of the case upon trial.

Opinion extended. Application overruled.