BEATTY, Justice.
Appeals by Preferred Risk and the Beaches from judgments based upon jury verdicts in favor of the Stuarts. We reverse and remand.
The plaintiffs, James and Jessie Stuart, contracted with Charles and James Beach, d/b/a Charles Beach Carpeting Company, to install a quantity of vinyl flooring in the Stuarts’ house. During the job a problem developed which necessitated separation of the upper floor from the subsurface. A quantity of gasoline was poured onto the surface to effect this separation and during that operation the gasoline ignited resulting in damage to the. house.
The house itself was insured by the Stuarts under a policy of insurance issued by Preferred Risk Mutual Insurance Company naming the Stuarts as beneficiaries.
The Stuarts filed an action against the Beach brothers alleging reckless, wanton or negligent conduct in the performance of the contract. The original complaint was amended to include Preferred Risk as a party defendant, alleging its fire insurance coverage and its refusal to pay. Later the trial court granted the plaintiffs’ motion to dismiss Preferred Risk without prejudice. The trial of the case between the Stuarts and the Beaches resulted in a mistrial. Thereafter Preferred Risk was brought back into the case as a defendant, whereupon Preferred Risk answered the amended complaint and added a cross-claim against the Beach brothers for recovery of any amounts which Preferred Risk was required to pay plaintiffs.
The trial resulted in a judgment being entered for-the plaintiffs in the amount of $53,585.33 plus 6% interest against the defendants Beach brothers and $19,000.00 plus 6% interest in favor of the plaintiffs against the defendant Preferred Risk. Judgment was entered in favor of Preferred Risk on its cross-claim against the Beach brothers in the amount of $19,000.00 plus 6% interest. The Beach brothers and Preferred Risk have appealed.
*982 A number of issues have been raised by the appellants. We do not address them all because we consider that the controlling issue requires a reversal for a new trial. That issue concerns the propriety of allowing the jury to deliberate and reach a second verdict after that jury’s first verdict had been received by the court and the jury then discharged.
The record discloses that an extensive oral instruction was given to the jury, including explanations of four verdict forms given to them. The jury then retired. After a side-bar conference between the court and counsel for both sides, the court called the jury back into the courtroom and gave them additional instructions. Once again they retired to deliberate, and about forty-five minutes later they announced that they had reached a verdict and were brought back into the courtroom. The court polled the jury and each juror indicated that it was his verdict. Upon reading one of the verdict forms the court commented to the jury that there was an apparent misplacement of “a comma and a decimal point,” and asked the jury to retire once again to determine whether or not “the comma and the decimal are in the right place or not.” Thus at that point in the trial the court had not received a verdict from the jury.
A short time later the jury again indicated that they had reached a verdict and returned to the courtroom where the following occurred:
THE COURT: Ladies and Gentlemen of the Jury, have you reached a verdict in this case?
MR. DAVIS: We have.
THE COURT: Is this the unanimous verdict of each and every one of you?
JURORS: Yes.
THE COURT: Let the record indicate that all jurors indicated that it was the verdict of each and every one, the unanimous verdict of each and every one. I will ask the Foreman to hand the verdict to the Bailiff and the Bailiff hand it to the Court.

(Whereupon, the Foreman and Bailiff complied with the Court’s instructions.)
* * * * * *
THE COURT: I will ask that the Clerk of the Court read the verdict of the jury.
THE CLERK: We, the jury, find for the Plaintiffs and against Defendants Charles and James Beach and assess damages in the amount of $34,583.33 plus 6% interest, James Davis, Foreman. We, the jury, find in favor of the Plaintiffs and against Defendant Preferred Risk Mutual Insurance Company and assess damage in the amount of $19,000.00 plus 6% interest. We, the Jury, find for the Cross-complainant Plaintiffs Preferred Risk Mutual Insurance Company and against the Defendants Charles and James Beach and assess damages in the amount of $19,000.00 plus 6% interest, James Davis, Jr., Foreman.
* * * * * *
THE COURT: I want to thank you very much for your services as jurors in this case. It has been a long case, and you all have done an excellent job as jurors in fulfilling your obligations. I know it has been inconvenient for you to give up all the time to serve on the jury and for that the State of Alabama and the County of Mobile and all the attorneys involved, we are deeply grateful to you, for your services. There is one bright light, and that is, you can be paid. If you all will step down to the Clerk’s office, you can be paid for your services as jurors. Needless to say, you don’t have to report back for jury duty. I will say this to you, considering, you won’t have to report back this week. In the event you all do get called to serve during this term of Court, to jury duty, I will see about having you excused from jury duty. Again, I want to thank you.
* * * * * *
(Whereupon, the Jury prepared to leave the Court Room.)
* * * * * *
(Whereupon, the jury returned to the Court Room.)

*983 At that point the trial judge returned to his chambers and counsel for one of the defendants left the courtroom; plaintiffs’ counsel, still in the courtroom, discussed the verdict with one of the jurors, and then went to the trial court’s chambers:
MR. KILLION: Judge, since the jury had the question that they asked with reference to the forms of the verdict, I know that I asked Your Honor while they were coming out, questions, but to make sure before, and to preserve the record in their presence, please Sir, that they understand that the maximum award given the Plaintiffs is $34,583.00. As long as they do, that’s fine. I just wanted to make sure of that, that they understand it.
THE COURT: Does either side wish the jury to be polled?
MR. KILLION: On that aspect, yes sir.
MR. RICHARDSON: Your Honor, we respectfully except to the question being asked.
THE COURT: I will poll the jury as to whether or not it was the verdict of each and every one, the verdict as rendered by the jury.
MR. KILLION: In the amount rendered.
THE COURT: As to the verdicts as rendered by the jury only.
MR. KILLION: We except.
* * * * * *
THE COURT: Let the record indicate that the entire jury is back in the jury box. Ladies and Gentlemen of the jury, you have rendered your verdict and it was read into the record, and the attorneys have come into my office saying that, Mr. Killion stated to the Court that he had talked with you and apparently you are all still here, as I come back on the Bench. We are treading on new grounds as far as what we are doing at the present time. I have one question where I would ask of the jury, whether or not the jury understands in the rendering of the verdict which has been presented to this Court, that the total amount that the Plaintiffs Stuarts are to receive in this case would be $34,583.33 plus 6% interest.
MR. DAVIS: No sir, and I think I am speaking for the jury. That figure—
THE COURT: You have answered my question.
MR. DAVIS: I’m sorry.
THE COURT: Did any one of your jurors, let me see how I should ask this, are the verdicts that were submitted to the Court by the jury, are these the verdicts of each and every one of you?
(Whereupon, the jurors nodded affirmatively).
THE COURT: Does the jury understand by the verdict that they have rendered, that the Plaintiffs in this cause will not receive the sum total of the two figures, that is $19,000.00 plus 6% interest and $34,583.33 plus interest?
MR. DAVIS: No.
THE COURT: Does the jury wish to go back and redeliberate their findings?
JUROR: Yes, Your Honor.
THE COURT: Is that the feeling of each and every one of your jurors.
JUROR: Yes, Your Honor.
THE COURT: Let the record indicate that each of the jurors indicated in the affirmative. Is there any one of your jurors that does not wish to re-deliberate your findings? Let the record indicate that none of the jurors responded to that question. I am going to give the jury, what we are doing now I know of no precedent for it, but I am sure that, I am going to allow you, that the Court is interested in seeing that the wishes of the jury is demonstrated in their verdict. I am going to allow the jury to take back the verdict forms that they previously had which were previously given to them. I am also giving to the jury another set of those same verdict forms that the Court previously had given to them, carbon copies of those. I would ask that any subsequent verdict rendered by this jury be made on these blank forms. Do any of the attorneys wish to see these forms?
MR. REEVES: Were there any changes on those forms?
*984 THE COURT: Yes, sir, but I also gave them Number Four and assess damages at blank dollars. All right, Ladies and Gentlemen of the jury, I am going to allow you to go back into the jury room with both sets of these verdict forms. If you desire to render a verdict form, I ask that you not change or make any marks on the verdict forms you previously have submitted to the Court. You may render your verdict on the other form. You may return to the jury room.
* * * * * *
(Whereupon, at 7:15 P.M., the jury returned to the jury room.)
* * * * * *
MR. RICHARDSON: Previously we excepted, and Charles and James Beach now respectfully except to the Court’s rein-structing this jury after they had rendered a verdict in this case. I want to state for the record that while Mr. Killion was in Court and Mr. Reeves was standing right here in Court and my client was in Court, that I had left the Courtroom with my clients in the hallway proceeding to go to my automobile when Mr. Killion came at me and informed me that he had a conversation with the jury after they had returned your verdict, whereupon the jurors in discussing the verdict and the results of the verdict wherein Mr. Killion informed me that back in the Judge’s Chambers, jie told the Court, he summoned me back in the Judge’s Chambers and told the Court that he didn’t think the jury really wanted to give what they had returned and urged this Court to put them back in the box, and put them in the jury box and re-charged them. It’s contrary to the law of Alabama; it’s contrary to everything I know about the jury system, the Court putting the jury back in the jury box and re-charging them. It’s contrary to the system of telling the jury the form of verdicts to be returned. I except to it as contrary to the law. It’s contrary to the established principles established by our Supreme Court in doing this. The conversations that took place with these jurors was out of my presence after the jury had been returned, they had gotten out of the box and were preparing to ieave. I object to it and my clients object to it, and I ask this Court to declare a mistrial in this case immediately. I want you to state for the record, Mr. Killion, whether or not those conversations took place in my presence.
MR. KILLION: I want at this time to state exactly what happened. Let the record show that after I asked the question I did, the record would show that after the jury returned its initial verdict, that as the jury was filing out of the box into the Courtroom here, and Mr. Boyd Reeves was standing there by me, one of the jurors came up to me and said, inquiring as to whether or not the, basically the words being, “Did the Stuarts get the $19,000.00,” and also as far as the judgment against Preferred Risk, in addition to $34,000.00, and I answered, “No, they did not.” So, he turned around to the other jurors and said “We didn’t,” he turned around to the other jurors that were there and said, “We didn’t, see, I told you that, I didn’t think that we were doing that”, something to that effect. At that point and time, and that was the extent of the conversation. Mr. Reeves can say whether or not there was anything else. That’s all I can remember. At that point and time, one of the jurors was right at the door leaving. I asked that the jury not leave then until, and Mr. Richardson was thirty-five feet away from the Courtroom, forty feet, something like that, talking to his clients. I asked him if he would come back so I could see Your Honor. At that point we went in to Your Honor and advised Your Honor of the comments made to me and that the jury was still all in the Courtroom and had not left. And that’s what led up to this situation. I further advised Your Honor that it was my opinion with reference to the question the jury had asked previously prior to arriving at its initial verdict that it seems that there was some doubt as to exactly, if the jury knew how to arrive at a verdict since we had complicated issues and three particular different claims being presented in this action. It seemed that since the'jury had not left the Courtroom, since they were all still here, since it was clearly evident by all of *985 them that none of them had arrived by the form of the verdict at what they really wanted to arrive at, all of which is supported by Your Honor’s questioning of the jury and by the unanimous individual reply that they did not want to give to the Plaintiffs just the sum of $34,583.00, but by the forms of the verdicts they have rendered, they did not accomplish their intent, and that in order to see that justice was carried out, what is now taking place is a result of that. Nothing else has occurred. They are still here. The Jury did not leave, they did not get away from here. I want to make that clear in the record. For the record, we have got a jury box probably about twenty-five feet away from the door, and they didn’t get out of this Courtroom, and as the jurors were, and I was stationed over here by the door, and as they were leaving, I got this, I don’t know his name, a little short gentleman back there on the back row, was the particular juror that was the one that made the statements he did. If I have incorrectly stated anything, Mr. Reeves can correct me. I am not trying to draw upon the inference, you know, put in a word wrong.
MR. REEVES: Your Honor, initially, let me object on behalf of Preferred Risk. I don’t know what this jury is going to do when it goes back there again, but for the purposes of this record and in order to preserve it, I would like to, on behalf of Preferred, object to this procedure after a verdict has been rendered. I'will confirm that as the jury was leaving—
* * * * * *
(Whereupon a knock was heard from the jury room door.)
* * * * * *
THE COURT: Just one second, Mr. Canton.
MR. CANTON (Bailiff): Have you reached a verdict? Just wait a minute.
MR. REEVES: I will confirm that as the jury was leaving the first or second juror came up to Mr. Killion and asked, in the absence of Mr. Richardson, who had left the Courtroom with his clients at that time, asked if the $1,900.00 [sic] would also be received by Mr. Stuart, and Mr. Killion said, “No, it would not,” and he said, “That is not what we intended to do,” and turned around to the other jurors and said, “We didn’t do what we wanted to do,” and at that time Mr. Killion said he wanted everybody back in, and I also want the Court to know that Mr. Richardson was not present when we got to this point.
MR. KILLION: I did not mean to leave that out. I don’t know, I assumed that Mr. Richardson was outside, and that’s where I got him from, I really don’t know.
MR. RICHARDSON: I can definitely state that I was outside.
MR. KILLION: That’s where I got him from after the events related.
THE COURT: The Court will state that the Court went to the Court’s Chambers, and the attorneys came to the Court and informed the Court that the, informed the Court further that all of the jurors were here in the Courtroom. I don’t know who asked the jurors to remain.
MR. KILLION: Well, I think I asked Mr. Canton, Judge, when that was said, I asked Mr. Canton if he would have the jurors remain and the Bailiff took care of that.
THE COURT: When the Court came into the Courtroom, the jurors were in the jury room. I must admit this is a highly irregular procedure. I cannot think of a case in which this ever happened before. I was treading on new ground. However, the Court will say that it is the Court’s intent that the verdict of the jurors be the verdict of the jurors, and the questioning that the Court had of the jurors, that it was obvious that it was not a verdict of the jurors in that they asked to be allowed to reconsider and to go back for further deliberations. The Court is interested to see that justice is in fact done in allowing this procedure. Is there anything further, Gentlemen, before we call the jury back in?
MR. KILLION: No sir.
MR. RICHARDSON: We respectfully except to these proceedings and again ask the Court for a mistrial and that the Court give me a ruling on this motion.
*986 THE COURT: At this time the Court will deny your motion for a mistrial.
At that point the jury returned to the courtroom and reported another unanimous verdict:
CLERK: We, the Jury, find for the Plaintiffs and against Defendants Charles and James Beach and assess damages in the amount of $53,583.33 plus 6% interest. James Davis, Jr., Foreman. We, the Jury find in favor of the Plaintiffs against Defendants Preferred Risk Mutual Insurance Company and assess damages in the amount of $19,000.00 plus 6% interest. James Davis, Jr., Foreman. We, the Jury, find for Cross-Plaintiff Preferred Risk Mutual Insurance Company and against Defendants Charles and James Beach and assess damages at $19,-000.00 plus 6% interest. James Davis, Jr., Foreman.
THE COURT: All right, Ladies and Gentlemen of the Jury, is the verdict, I will ask you again, is the verdict as read by the Clerk the unanimous verdict of each and every one of you? Let the record indicate that each juror indicated in the affirmative. I will ask that the first verdicts rendered by the jury to the Court be put together and be marked as Court’s Exhibits One, and that the second set of verdicts as just read by the Clerk and submitted by the Jury be marked as Court’s Exhibit Number Two.
Until a jury has been discharged, it is within the power of the trial court to direct it to correct its verdict so as to make it appear in proper form. Robert P. Stapp Machinery Co. v. Russell, 277 Ala. 84, 167 So.2d 167 (1964); 18A Ala.Dig., Trial, Key 339. There are other cases on this general subject, but they disclose facts wherein the jury was asked by the court to correct er rors in the form of their verdicts prior to their discharge. E. g., City of Tuscaloosa v. Fair, 232 Ala. 129, 167 So. 276 (1936)(overruled on other grounds in Jacks v. City of Birmingham, 268 Ala. 138, 105 So.2d 121 (1958)); Butler v. Walton, 36 Ala.App. 319, 56 So.2d 369 (1951). It is clear that this option was exercised by the trial court when the jury’s attention was called to the decimal and comma in the verdict form and the jury was directed to deliberate once again. It is equally clear under our authorities that the discharge of the jury by the trial court ends their consideration of the case. St. Clair v. Caldwell & Riddle, 72 Ala. 527 (1882), following Walters v. Junkins, 16 Serg. & R. 414, 16 Am.Dec. 585 (1826). In Walters, after the jury had reported their verdict, which found certain costs taxable against the defendant, we find that these events transpired:
The verdict was recorded, and the jury formally told that they were discharged. The jury, or most of them, remained in the box while another cause was progressing. Upon a conversation between the foreman and the plaintiff’s attorney it was intimated that the jury intended to find full costs against the defendant. The court then instructed the jury to retire and certify what they intended their verdict should be. They did so; and returned that their finding had been six cents damages and full costs, and the minutes were so corrected....
Such a practice found disfavor in the court’s opinion:
After the jury have rendered their verdict, it is read to them, that they may say whether the court have recorded it according to their finding. If any mistake should have occurred, it may be immediately corrected. To permit an alteration after the jury are dismissed, would lead to great abuses, and I am unwilling to extend the principle further than the adjudged cases. How long shall this privilege last; how draw the line of distinction, and in what manner shall we ascertain whether it be the correction of an honest mistake, or the result of improper tampering and out-of-door management with the jury? The remedy attended with the least danger is to commit the cause to another jury on a motion for a new trial [or when the error is preserved during trial under the authority of Rule 4(a)(3), ARAP. McGough v. Slaughter, Ala., (MS., March 6, 1981.) 395 So.2d 972 (1981).]

*987

The law allows the jury all reasonable opportunity before their verdict is put on record, and they are discharged, to discover and declare the truth according to the judgment. The court may also, of their own accord, send the jury back to reconsider their verdict, if it appears to be a mistaken one, and before it is received and recorded. [Citations omitted.] Although these cases do not expressly determine the point, the inference is irresistible that where the verdict is received, recorded, and the jury dismissed, as here, they have not the power to alter their verdict.
The foregoing reasons in a case so strikingly similar to the extant facts point up the difficulty in arriving at any solution other than an absolute ,one. “How long shall the privilege last?” Once the verdict has been received and the jury discharged, should we or the participants be allowed to speculate on the degree to which the trial court has lost its control over the conduct or the deliberations of that jury, to the end that every such instance becomes a relative issue? What lines of realistic distinction shall exist between the cases which will result when we observe that the jury, though being discharged and thus free from the constant supervision and authority of the court, nevertheless were still physically in the courtroom and therefore still subject to some form of that supervision? And how shall we determine what went on between lawyer and juror when the trial judge and opposing counsel both were absent? In Edwards v. Seaboard Coast Line R. Co., Ala., 384 So.2d 96 (1980), this Court refused to countenance discussions between the trial judge and individual jurors in chambers, even though the well-meaning trial judge had in his own view substantially recited for the record the entire conversations. Our concern was not only for the impartiality of the tribunal but for the appearance of impartiality as well:
“Whether or not injury or injustice has resulted to the litigants by reason of the conduct, is not our primary concern. Rather, our concern is with the implication that attaches to the administration of justice under these circumstances. Confidence in our judicial system is imperiled if such conduct is countenanced in jury trials. Conduct which if proved would give rise to doubt and disrespect, or the mere appearance of such conduct as will not meet with the approval of public opinion, must be severely condemned. It is only through the granting of a new trial in situations like this, as well as vigilant efforts by the officers of the court to prevent such occurrences, that public confidence in the jury system may be preserved. Rasmussen v. Miller, 268 Wis. 436, 68 N.W.2d 16, 18.” [Quoting from Daniels v. Bloomquist, 258 Iowa 301, 138 N.W.2d 868, 872 (1965).]
In our view, those statements apply with equal force to the situation before us. It is doubtful that the purest motives for exacting duplication can completely and perfectly repeat what may have been exchanged between lawyer and juror when both have been released from the direct control of the supervising judge, or that the appearance of impropriety can be removed. The elimination of suspicion in such instances is too much of a burden on judges and lawyers alike, whatever the motives for the communication, when the latent dissatisfactions with ad hoc decisions on such issues are available to those who already find it easy to criticize the judicial system and its participants. The integrity of the specific decision and that of the entire system are affected. Recognition of the need to prevent such occurrences is not the application of some mean technicality. What we deal with here is at the very root and branch of the jury system itself. The integrity of that system does not permit such instances to be decided by “the length of the chancellor's foot.”
The case of Brown v. Barr, 269 Ala. 497, 113 So.2d 924 (1959), cited by the appellee, is inapposite. That case held only that a discharge of a civil jury had not occurred when, following their charge, they were allowed to separate before they rendered their verdict. Likewise, Alabama Power *988 Co. v. Cleckler, 295 Ala. 73, 323 So.2d 344 (1975), clearly involved the correction of a clerical mistake under Rule 60(a), ARCP, and not a discharge.
The case of Masters v. State, Fla.App., 344 So.2d 616 (1977), decided by the First District Court of Appeal of Florida, does stand for the principle that a discharged jury which in fact remained an undispersed unit within the control of the court, could be re-impaneled to consider another verdict. An examination of the facts of that case, however, reveals clear distinctions from those presented by the record in our case. In Masters the jury had found double verdicts of guilty under one count of an information but no double conviction under other counts. The verdicts were read, the trial court instructed the clerk to publish them, the clerk did so, and the court discharged the jury, “advising them that they could go their separate ways for the term.... But almost immediately upon the discharge of the jury the court’s attention was called to the fact” of the jury’s error, and
[t]he court ... called counsel to the Bench and informed them as to what had been disclosed to him. The record is silent as to whether the jury had left the courtroom, or if so, how far they had retired when the court learned of the double verdict .... It was recalled within minutes of its discharge and it is therefore evident that they had not left the courthouse. The record is silent again as to whether the individual jurors had separated before they were recalled. There is nothing in the record to indicate that any outside influence had been brought to bear upon the jury, or any member of it during the interim before its recall, or that any opportunity existed for the jury, or any member of it, to be communicated with or tampered with by any person during the very few minutes that transpired between the time of discharge and recall....
And the district court of appeal added, at 621:
The very case upon which it had been impaneled was still under discussion by the court, without the intervention of any other business, at the time it was recalled for the purpose of clarification of its verdict. ...
The factual distinctions which lie between Masters and the present case lend support to our position and disclose the lack of application of Masters here. Following discharge here the trial judge retired to his chambers. Thus the courtroom did not possess his presence as a control over the conduct of the discharged jury. Also, the very case which the jury was impaneled to hear was not “still under discussion by the court without the intervention of any other business” at the time the jury was recalled. Moreover, there was no call of all counsel before the court almost immediately. And the record does affirmatively disclose the ex parte communication by one of a party’s counsel during the few minutes transpiring between the discharge and recall, and while one of the parties’ counsel was outside the courtroom.
Because we have concluded that this cause must be reversed and remanded for a new trial, it is unnecessary to address other issues raised.
REVERSED AND REMANDED.
TORBERT, C. J., and ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
JONES, J., concurs specially.
MADDOX and FAULKNER, JJ., dissent.