PER CURIAM.
James Beauford Lamb, Jr., filed a petition for a writ of certiorari asking this Court to review the Court of Criminal Appeals’ affirmance of the Tallapoosa Circuit Court’s summary dismissal of his Rule 32, Ala. R.Crim. P., petition challenging his 2004 conviction for first-degree sexual abuse and his sentence of 10 years in prison. See Lamb v. State, 113 So.3d 677 (Ala.Crim.App.2010).
This Court granted Lamb’s petition to decide the following issue: Whether the trial court erred in entering a judgment based on an amended written jury verdict resulting from the fact that the polling of the jury reflected a verdict different from the original written jury verdict and arrived at after conferring with seven members of the discharged jury, who had left the presence and control of the court and were recalled. Lamb contends that the Court of Criminal Appeals’ affirmance conflicts with Hayes v. State, 44 Ala.App. 499, 214 So.2d 708 (1968), which held that once the jury has been discharged and has left the court’s control, the jury could not properly be resummoned to correct or amend an insufficient verdict and that the judgment entered on the amended verdict of that recalled jury must be reversed. Because we hold that a conflict does exist and that the rule in Hayes does apply to this case, we reverse the judgment of the Court of Criminal Appeals.

Facts and Procedural History

Lamb was charged in a four-count indictment and his case tried before a jury.[1]
“When the jury returned its verdicts, the jury foreman orally announced guilty verdicts on counts I, II, and III. When the circuit court asked for a verdict on count IV, the foreman stated that he had signed the wrong designation on this verdict form. The circuit court instructed the jury to return to the jury room to correct this error. When the jury returned, the foreman orally announced a ‘not-guilty’ verdict on count IV.”
Lamb v. State, 113 So.3d at 679 (footnotes omitted). The court then proceeded to poll the jury for the record as to its verdict on the three counts on which it had found Lamb guilty. The court polled each juror only once as to all three counts rather than count by count. After polling the jury, the court discharged the jury, and the jurors left the courtroom.
“When the circuit court proceeded to formally adjudicate guilt, it noticed that the verdict form for count II — the first-degree sexual abuse of J.M. — was signed by the jury foreman as ‘not *688 guilty’ — as opposed to what the foreman had orally announced in open court— ‘guilty.’
“The trial court reassembled the jury but was able to locate only 7 of the 12 members, one of whom was the foreman. The circuit court asked the seven jurors to correct the verdict for count II of the indictment. After some discussion, the foreman indicated that the jury’s verdicts were guilty as to counts I, II, and III, and not guilty as to Count IV. At the circuit court’s direction, the foreman changed the verdict form for count II to read ‘guilty.’ ”
Lamb, 113 So.3d at 679-80 (citation to record omitted).
This Court granted certiorari review to determine whether the trial court erred in dismissing Lamb’s Rule 32 petition challenging his conviction, entered on an amended written verdict necessitated by a conflict between a polled verdict and the original written verdict and arrived at by the trial court after conferring with seven members of the discharged jury.
As the trial court was formally adjudicating guilt for each of what it understood to be the three guilty counts, the court stated:
“All right. As to count two — well, it was my understanding that they announced guilty on count two. I thought I saw this in here. I thought I saw it. They’ve got a not guilty signed in count two, and they’ve got — and then they changed the one in count four. This was not — they signed it. We will go on.”
Upon completing the adjudication, the court assembled seven members of the discharged jury, as many members of the jury as could be found remaining in the courthouse; one of those seven was the jury foreman. The court then inquired of the jury foreman:
“THE COURT: Let me just ask for clarification. You’re the foreperson. We’ve got the jury back, some of them. We have got the foreman back in here, primarily. The foreperson.
“Mr. [Foreman], when you announced your verdict on count two, you announced guilty. Okay? However, verdict form number two is signed under the not guilty.
“THE FOREMAN: That’s what happened was I signed that one instead of count four. That’s how that mistake—
“THE COURT: Okay. So is it the understanding, then, the vote was guilty on count two and not guilty on count four?
“THE FOREMAN: That is correct.
“THE COURT: I’m going to let you correct this one, then, for me so that we will have it in proper form.
“THE FOREMAN: I’m sorry, Your Honor. I’ve never done this before.
“THE COURT: That’s all right. No problem at all.
“THE FOREMAN: I think what confused me, Your Honor, was the first and second degree between counts two and four. And that’s where I got confused on it. One is first degree; the other is second degree.
“THE COURT: All right. I understand that, then.
“THE FOREMAN: Okay.
“THE COURT: All right. Now, I note that I was only able to catch seven of the jurors. However, when I polled the jurors for the Record, I asked them pertaining to the three counts that they had found the defendant guilty on, was this their true verdict. And they said that it was. I did not specify the three counts that y’all found him guilty on. That’s correct?
“THE FOREMAN: Yes, sir.”[2]
*689 The record shows that before to being discharged, the jury was polled as to its verdict of guilty on three of the four counts. Further, the record makes clear that only after the jury was discharged did the court read the verdict form for count II, which the jury foreman had signed under the “not guilty” option. In seeking to correct the discrepancy between the oral verdict and the written verdict, the court reconvened seven of the discharged jurors, including the foreman, and corrected the verdict form based upon the testimony of the jury foreman and a re-polling of those seven jurors.

Standard of Review

The operative facts are not disputed; thus, we are presented with a question of law. The standard of review for pure questions of law in criminal cases is de novo. Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003).

Discussion

“Until a jury has been discharged, it is within the power of the trial court to direct it to correct its verdict so as to make it appear in proper form.” Preferred Risk Mut. Ins. Co. v. Stuart, 395 So.2d 980, 986 (Ala.1981) (citing Robert P. Stapp Mach. Co. v. Russell, 277 Ala. 84, 167 So.2d 167 (1964)). In fact, the trial court did just that in this case. When the jury first presented its verdict but before the verdict was placed on the record, the jury foreman informed the court that he had signed the incorrect line on the verdict form for count IV, and the jury was allowed to retire to correct this error. However, despite knowing of the confusion with the four verdict forms, neither the court nor counsel read the verdict forms contemporaneously with the polling of the jury or before the jury was discharged.
“It is ... clear under our authorities that the discharge of the jury by the trial court ends their consideration of the case.” Preferred Risk, 395 So.2d at 986 (citing St. Clair v. Caldwell & Riddle, 72 Ala. 527 (1882)). This Court has stated:
“It is the duty of the [trial] court, and of the prosecuting officer, to look after its form and substance, so far as to prevent an unintelligible, or a doubtful, or an insufficient verdict from passing into the records of the court, to create embarrassments afterward and perhaps the necessity of a new trial.”
Allen v. State, 52 Ala. 391, 392 (1875). In this case, the verdict forms were not reviewed before the jury was discharged, and the record contained a verdict form for count II indicating a “not guilty” verdict while a poll of the jury had indicated a finding of “guilty” on that same count. Upon realizing the conflict, the trial court recalled the seven available members of the discharged jury to correct the verdict form.
On review, the Court of Criminal Appeals upheld this amended verdict as a clerical correction authorized by Rule 29, Ala. R.Crim. P., which provides, in pertinent part, that “[clerical mistakes in judgments, orders, or other parts of the record, and errors arising from oversight or omission may be corrected by the court at anytime of its own initiative or on the motion of any party and after such notice, if any, as the court orders.” The Court of Criminal Appeals relied in part on Dera-mus Hearing Aid Center, Inc. v. American Hearing Aid Associates, Inc., 950 So.2d 292 (Ala.2006). In Deramus, the trial court inadvertently signed an order entering a summary judgment for the defendants and subsequently corrected its mistake by rescinding that order and signing a summary-judgment order in favor of *690 the plaintiffs, as it had originally intended to do, pursuant to the authority granted it by Rule 60(a), Ala R. Civ. P., from which Rule 29, Ala. R.Crim. P., is directly taken. See Committee Comments to Rule 29, Ala. R.Crim. P. This Court held that “[t]he type of correction in the instant case was clerical in that the correction did not involve one of judicial reasoning, i.e., a mistake of fact or modification of an original judgment, which would require judicial discretion under Rule 60(b), Ala. R. Civ. P.” Deramus, 950 So.2d at 295.
Deramus, however, is distinguishable from the present case. In Deramus, the sole party responsible for the dispositive judgment and the clerical error relating thereto was the judge. He was never “discharged” or otherwise removed from his judicial duties between the time the clerical error was committed and the time it was corrected. Further, because it was a civil action, Deramus was not affected by double-jeopardy concerns. In the present case, the only entity authorized at law to determine the verdict as to count II of the indictment charging Lamb was the jury. At the moment the jury was discharged, the record contained a written verdict form stating the jury had found Lamb “not guilty” as to count II and the trial court had polled the jurors, who indicated that they had rendered a guilty verdict as to that same count.
Undertaking to change a jury’s verdict, whether in written or oral form, is unavoidably a substantial change, not a mere correction of a clerical mistake, and such a change should have been noticed, altered, and entered on the record before the jury was discharged, the moment that “ends [its] consideration of the case.” Preferred Risk, 395 So.2d at 986 (citing St Clair, supra). It is clear from the record that the trial court was not making this correction pursuant to Rule 29, Ala. R.Crim. P., because Rule 29 allows the court to make such a correction “at anytime of its own initiative.” Rather, the trial court recalled seven of the discharged jurors, inquired of their intent on the record, re-polled them as to the verdict, and requested that the jury foreman make the necessary correction on the verdict form for count II.
In Hayes, 44 Ala.App. at 501-02, 214 So.2d at 710, the Court of Appeals summarized this Court’s jurisprudence on this issue as follows: “When a jury has been discharged by the court and has left the courtroom so as to place themselves beyond the immediate, continuous control of the court, their connection with the case ceases to exist and thereafter that case is beyond their control.” (Emphasis added.) In Hayes, the jury read the verdict in court and was then discharged. After the jurors left the courtroom, it was discovered that the jurors had returned two written verdicts, although they had been instructed to return only one. The court sent the bailiff to retrieve the jurors. The bailiff returned “15 or 20 minutes” later with “some” of the jurors, and the other jurors returned a few minutes after that. 44 AlaApp. at 500-01, 214 So.2d at 710. The Court of Appeals held- that “once the jury has been discharged and left the court’s control, they could not thereafter be resummoned in order to correct or amend a verdict which is insufficient in substance.” 44 AlaApp. at 502, 214 So.2d at 710 (emphasis added).- This- reasoning is consistent with this Court’s reasoning in Preferred Risk. “ ‘Although [this Court’s prior] cases do not expressly determine the point, the inference is irresistible that where the verdict is received, recorded, and the jury dismissed, as here, they have not the power to alter their verdict.’ ” 395 So.2d at 986 (quoting Walters v. Junkins, 16 Serg. & Rawle 414, 16 Am. Dec. 585 (Pa.1826)).
*691 A critical concern raised by a jury’s discharge, later recall, and subsequent rendering of a second verdict is the possibility that “ ‘any outside influence’ ” could be brought to bear on the jurors or the jurors could be “ ‘communicated with or tampered with by any person’ ” during the “‘very few minutes that transpired between the time of discharge and recall.’ ” Preferred Risk, 395 So.2d at 988 (quoting Masters v. State, 344 So.2d 616, 619 (Fla. Dist.Ct.App.1977)).
At Lamb’s trial, the jury was outside the courtroom and outside the presence and supervision of any officer of the court for a few minutes between its discharge and the recall. Additionally, five members of that jury were completely unavailable and did not participate in that recall. Even if this Court were to somehow overlook the possibility of taint once this jury was formally discharged and beyond the presence and supervision of the court, a significant concern remains that five members of the discharged jury were not available to attempt to correct the inconsistent verdicts.
An additional concern raised by the facts of this and similar cases, as this Court discussed in Preferred Risk, is the appearance of impropriety. 395 So.2d at 987. The integrity of jury verdicts and their acceptance by the society governed by them are “at the very root and branch of the jury system itself.” 395 So.2d at 987. What is before us — a correction to inconsistent verdicts on a single count of an indictment by seven members of a discharged jury who had been beyond the presence and supervision of the court— certainly appears improper.

Conclusion

The jury delivered two inconsistent verdicts as to count II of the indictment charging Lamb with .first-degree sexual abuse, one of which was a written verdict form finding Lamb “not guilty,” which became final when it was accepted by the court and the jury discharged.[3] The jury then left the presence and supervision of the court. Thereafter, neither the jury nor the trial court had the power to alter the verdict. Preferred Risk, 395 So.2d at 987. The written verdict form for count II signed by the jury foreman that was delivered to the court indicated that the jury found Lamb “not guilty” of sexual abuse in the first degree, as charged, and that is the verdict that must stand. Any subsequent alteration of the verdict under the facts of this case would subject Lamb to being placed twice in jeopardy for a crime he had been acquitted of and would violate his rights against double jeopardy under the United States Constitution and the Alabama Constitution.
The Court of Criminal Appeals’ affir-mance of the Tallapoosa Circuit Court’s summary dismissal of Lamb’s Rule 32 petition therefore must be reversed and the cause remanded to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MALONE, C.J., and WOODALL, STUART, BOLIN, PARKER, and MURDOCK, JJ., concur.
SHAW, J., dissents.
MAIN and WISE, JJ., recuse themselves.*

. Lamb was charged with first-degree rape, first-degree sexual abuse, and incest with regard to one victim (counts I, II, and III) and with second-degree sexual abuse as to another victim (count IV). Only issues relating to count II — the first-degree-sexual-abuse conviction — are before us.

. Further review of the record indicates that the trial court did in fact specify "counts I, II, and III” before polling the jury.

. This Court is releasing another case on this date, Ex parte T.D.M., [Ms. 1091645, October 28, 2011] - So.3d - (Ala.2011), with analogous facts and a similar outcome. We note that the problematic recalling of a discharged jury can be avoided in all cases if, before the jury is discharged, the court polls the jury and the court and all counsel review the written verdict form or forms.