MAIN, Judge.
T.D.M. appeals his convictions for first-degree sexual abuse, see § 13A-6-66, Ala. Code 1975, and first-degree sodomy, see § 13A-6-63, Ala.Code 1975. He was sentenced to 20 years’ imprisonment for the sodomy conviction and 5 years’ imprisonment for the sexual-abuse conviction, the sentences to run concurrently.
I.
T.D.M. argues that his rights against double jeopardy were violated because the trial court allowed the jury to change its verdict after the jury had been discharged.
The record indicates that after the jury had finished its deliberations and returned to the courtroom, the following occurred:
“THE COURT: Ladies and gentlemen, it’s my understanding the jury has reached a verdict in this case. The Court’s not going to tolerate any outbursts or any response from anyone in reference to the verdict. Once the jury reads the verdict, we’re going to allow the jury to go out and we’re going to— everybody’s going to sit and remain silent until the jury leaves. Then one family’s going to go out at a time. So does everybody understand that?
“Bring them in.
“(The jury returned to the courtroom at 5:19 p.m., after which the following proceedings were had before the Court and jury.)
“THE COURT: You may be seated. Has the jury reached a verdict?
“FOREPERSON: We have, Your Honor.
“THE COURT: Please read the verdict.
“FOREPERSON: We, the jury, find the defendant, [T.D.M.], guilty of the offense of sexual abuse in the first degree as charged in count one of the indictment.
“We, the jury, find the defendant, [T.D.M.], not guilty of the offense of sodomy as charged in count two of the indictment.
“THE COURT: What says the State?
“[Prosecutor]: The State’s satisfied. Your Honor.
“THE COURT: What says the defendant?
“[Defense counsel]: We don’t want you to poll, Judge, if that’s what you’re asking. And we want to make a posttrial motion.
*924 “THE COURT: Ladies and gentlemen, on behalf of the lawyers involved in this case; our Circuit Clerk, Mr. Ervin; the Sheriff; and the other judges in this circuit, we thank you for your time. We hope you have enjoyed your experience. This concludes your jury service for the week. Mr. Ervin’s office has prepared your checks and your excuses. You will now be free to go. However, if you desire to stay around and talk to the family members or any of lawyers, you may. That is up to you. Again, it was a pleasure meeting you. Mr. Ervin will take your badges. He will also hand you the information you need to go.
“Ladies and gentlemen, you will remain seated until after the jurors have been excused.
“(The jury was excused at 5:21 p.m.)
“THE COURT: [T.D.M.], based on the jury finding you guilty of the offense of sexual abuse in the first degree, I’m going to find you guilty of the offense of sexual abuse in the first degree. Based on the jury’s verdict of finding you not guilty of the offense of sodomy in the first degree, I’m going to find you not guilty of the offense of sodomy in the first degree.
“Do y’all want a presentence report?
“[Defense counsel]: Yes, Your Honor.
“THE COURT: Is the defendant going to remain on the same bond?
“[Prosecutor]: Yes, sir. Your Honor.
“THE CLERK: Excuse me. Judge.
“(WHEREUPON, an off-the-record discussion was held.)
“THE COURT: The foreperson signed the wrong one.
“[Defense counsel]: What happened?
“THE COURT: They read the wrong verdict form. She signed the wrong verdict form.
“Bring the foreperson in....
“THE COURT: [Foreperson], you handed the Court the jury verdicts and you represented to the Court that you gave the Court incorrect information.
“FOREPERSON: Yes, sir.
“THE COURT: Explain that to the Court.
“FOREPERSON: Well, when I stood up to read, I realized that I had signed the wrong one. We agreed on both counts of guilty.
“THE COURT: And the form you handed me is indicating not guilty?
“FOREPERSON: Right.
“THE COURT: And you are saying that is not the jury’s verdict?
“FOREPERSON: No. That wasn’t our verdict.
“THE COURT: What says the State?
“[Prosecutor]: Your Honor, it appears that there has been a clerical mistake. And I think that they should be allowed to adjust that.
“[Defense counsel]: Judge, under double-jeopardy laws, the jury — she signed the verdict, she published the jury verdict and the State did not request that the jury be polled. The Court actually entered judgment after that. Under double-jeopardy laws, you can’t go back and change it. It is what it is. It wouldn’t be any different if they read a guilty verdict. Once they make the verdict and they publish it and the Court accepts it and neither party asks for a polling of the jury, neither party objected to anything about the verdicts and the Court has actually entered judgment and that prevents him from being put back in jeopardy for that crime.
“[Prosecutor]: Your Honor, this case is not being tried again. This is part of the process. I mean, she — the foreman made a mistake. We don’t suspect that *925 there’s been any bad faith on her part, just human error.
“... They just want to go in and correct what the verdict should accurately reflect, and that’s a guilty verdict on both counts.
“THE COURT: We’ve put all the information on the record. I’m going to bring the jurors back in, and let them make their representation to the Court. And I’ll give /all a chance to make an issue.... We’ll let the jurors correct it and explain as to the reason why they did this.
“(The jury returned to the courtroom at 5:30 p.m., after which the following proceedings were had before the Court and jury.)
“THE COURT: [Foreperson], it’s my understanding you would like to make a correction for the Court concerning the verdict. What is the jury’s verdict as to count two in the indictment?
“FOREPERSON: We, the jury, find the defendant, [T.D.M.], guilty of the offense of sodomy first degree as charged in count two of the indictment.
“THE COURT: We’re going to start down here on the end.
“(Each juror, upon being asked by the Court, ‘Is that your verdict?’ answered in the affirmative.)
“(Short recess.)
“THE COURT: We’re going to go back on the record to clarify exactly what happened. My understanding is that the jurors had left the courtroom and were outside to receive excuses and they brought it to the attention of the clerk that the verdict they had given and was accepted was not the correct verdict. At that point, we brought the jurors back and questioned the foreperson and then polled the entire jury.
“[Prosecutor]: That’s the States’s position that that’s an accurate understanding as to what occurred.
“[Defense counsel]: Yeah. I mean, we don’t dispute what the Court described.”
(R. 517-25.)
The clerk testified that just before sentencing, when the jurors were discharged, the others present in the courtroom remained inside as the jurors exited. The clerk stated that he held the door open for the jurors to exit. As the foreperson walked by, she informed him of the mistake and he stepped into the hall to confer with her. He stated that all the jurors “huddled” around him as he was told that the wrong form was signed. (R. 353.) He immediately informed the judge of the mistake. He further testified that none of the jurors had left the third floor, which he considered “his jurisdiction.” (R. 355.)
Subsequently, during the sentencing hearing, the trial court stated that the Alabama Supreme Court had refrained from addressing the proposed certified question from T.D.M. concerning the acceptance of the sodomy verdict after the jury had been discharged; the Court had instructed the trial court to rule on the matter. The trial court stated that it was accepting the guilty verdict as to the sodomy charge. Defense counsel then argued that, because the jury had found T.D.M. not guilty, to go any further or “to go behind it” was a violation of double-jeopardy principles. (R. 345.) The prosecutor responded that because the jury, although discharged, was still within the control of the court, it could properly correct the mistake in its verdict and there was no double-jeopardy violation. The prosecutor argued:
*926 “In this case. Judge, if you will recall, the clerk was in the process of holding the door open for the jury as they were on their way out of the courtroom. And one of the jurors — I believe the foreperson — walked by the clerk, told him after she had read the verdict that she made a mistake, that that was not their findings back in the jury room. And most of the jury — or maybe all of them — were still on this floor, had not left this floor. They were in the process of going out of the courtroom. It was brought to the Court’s attention. The Court reassembled the jury, directed them to go back into the jury room, not to deliberate further, but to correct the mistake that they had discovered. And after the jury corrected the mistake, you brought them back out. And they were polled individually. And they all said that that was their finding.
“So, in conclusion. Judge, although it may be argued that a jury may not be recalled to effect its verdict once discharged, Alabama law dating back more than one hundred years states that a discharge is only effective if the jury has gone beyond the immediate and continuous control of the court; thereby, subjecting themselves to extra-trial influences.”
(R. 346^7.)
Defense counsel responded that because the jury had left the courtroom, the members were out of the control of the court, had been discharged, and no longer had the ability to deliberate.
“The constitution of the United States, in the fifth amendment, declares, ‘nor shall any person be subject to be twice put in jeopardy of life or limb.’ ” Ball v. United States, 163 U.S. 662, 669, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). “[T]he double jeopardy clause is aimed at prosecutors and judges to ensure that a defendant is not placed in jeopardy twice for the same offense.” United States v. Davis, 656 F.2d 153, 157 (5th Cir.1981). “Jeopardy attaches at the empaneling and swearing in of the jury, Crist v. Bretz, 437 U.S. 28, 35, 98 S.Ct. 2156, 2160, 57 L.Ed.2d 24 (1978); Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), and from then on, consideration must be given to the defendant’s ‘valued right ... to have his trial completed by the particular tribunal summoned to sit in judgment on him.’ Id. at 736, 83 S.Ct. at 1034.” United States v. Bobo, 586 F.2d 355, 362 (5th Cir.1978). “The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.” Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). “The double jeopardy clause clearly enunciates a policy of finality in criminal proceedings in favor of the defendant. United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553 (1971).” People v. Rushin, 37 Mich.App. 391, 395, 194 N.W.2d 718, 720 (1971).
The double-jeopardy implications inherent in recalling a discharged jury to amend its verdict have resulted in cases holding that the trial court’s declaration of discharge established the end of any possible amendment of the verdict, and other cases that made their determination by evaluating the circumstances of the location and conduct of the jury after the court announced that it was discharged.
*927 “The general rule is that a jury may not be reassembled after discharge to amend a verdict. While some states adopt a strict ‘bright line’ test, others have allowed the amended verdict, under limited circumstances, using various guidelines or tests to ensure the integrity of the verdict. Compare Perryman v. State, 102 Tex.Crim. 531, 278 S.W. 439 (1925) (jury could not amend verdict where foreman asked judge to let jury reconsider almost immediately after rendering verdict); Cook v. State, 60 Ala. 39 (1877) (jury could not be reassembled to render verdict in presence of prisoner five minutes after rendered in his absence even though the two jurors who had left courtroom swore they had conversed with no one), with Summers v. United States, 11 F.2d 583 (4th Cir.1926) (allowed amended verdict, distinguishing merely formal discharge from discharge in fact); Levells v. State, 32 Ark. 585 (1877) (jury could be recalled to specify on which of two counts a verdict was entered).”
State v. Roberge, 155 Vt. 121, 124, 582 A.2d 142, 144 (1990) (wherein there was no allegation of tampering, “practically no opportunity for discussion or influence by outsiders” 155 Vt. at 125, 582 A.2d at 145, and no reconsideration of the issues by the jury when the jury was recalled after having left the courtroom to enter guilty verdicts as to each of the three counts; thus, there was no impropriety). There are a number of possible entailments or problems resulting from recalling a jury after it has been discharged. As noted in Preferred Risk Mutual Insurance Co. v. Stuart, 395 So.2d 980 (Ala.1981):
‘“To permit an alteration after the jury are dismissed, would lead to great abuses, and I am unwilling to extend the principle further than the adjudged cases. How long shall this privilege last; how [to] draw the line of distinction, and in what manner shall we ascertain whether it be the correction of an honest mistake, or the result of improper tampering and out-of-door management with the jury?....
“.... ‘How long shall the privilege last?’ Once the verdict has been received and the jury discharged, should we or the participants be allowed to speculate on the degree to which the trial court has lost its control over the conduct or the deliberations of that jury, to the end that every such instance becomes a relative issue? What lines of realistic distinction shall exist between the cases which will result when we observe that the jury, though being discharged and thus free from the constant supervision and authority of the court, nevertheless were still physically in the courtroom and therefore still subject to some form of that supervision?”
395 So.2d at 986-87 (quoting Walters v. Junkins, 16 Serg. & Rawle 414, 16 Am. Dec. 585 (Pa.1827)).
“When the court announces [the jury members’] discharge, and they leave the presence of the court, their functions as jurors have ended, and neither with nor without the consent of the court can they amend or alter their verdict. The sanctity of jury trials cannot be thus subjected to the hazard of suspicion.” Melton v. Commonwealth, 132 Va. 703, 707, 111 S.E. 291, 294 (1922). See Cook v. State, 60 Ala. 39, 42 (1877) (holding that the jury had been discharged despite its having entered the verdict outside the presence of the defendant, because the jury members “had dispersed among the audience in the courthouse and [among the] persons outside”).
“Until a jury has been discharged, it is within the power of the trial court to *928 direct it to correct its verdict so as to make it appear in proper form. Robert P. Stapp Machinery Co. v. Russell, 277 Ala. 84, 167 So.2d 167 (1964); 18A Ala. Dig., Trial, Key 339.” Preferred Risk Mut. Ins. Co. v. Stuart, 395 So.2d at 986. However, a determination must initially be made as to whether a jury has in fact been discharged or has separated.
In State v. Rodríguez, 139 N.M. 450, 134 P.3d 737 (2006), Rodriguez contended that the trial court violated his right to be free from double jeopardy by reassembling the jury to correct its verdict as to the driving-while-intoxicated charge from not guilty as indicated on the signed form to guilty. The jurors had been discharged by the court, but the bailiff moved the jury back to its room because the jurors had informed him that the announced verdict was not their decision. The jury was exiting the courtroom when the bailiff was informed of the impropriety. Five minutes later, the jurors were polled as to their verdict and all affirmed that it was guilty as to the driving-while-intoxicated charge. The Supreme Court of New Mexico stated:
“To decide whether the correction of the verdict form from not guilty to guilty violated Defendant’s constitutional right to be free from double jeopardy, we must first determine whether the trial judge erred in reassembling the jury once he announced he was going to discharge the jury. As the Court of Appeals pointed out in its opinion, ‘[wjhether a trial court may reassemble a discharged jury to amend, clarify, or correct a verdict is the subject of a surprising number of cases throughout the country.’ [State v.] Rodriguez, 2004-NMCA-125, ¶ 7, 136 N.M. 494, 100 P.3d 200. Some states categorically preclude the reassembly of a jury to correct a verdict once the trial judge announces his or her intent to discharge the jury. See, e.g., West v. State, 228 Ind. 431, 92 N.E.2d 852, 855 (1950). Other states analyze whether the jury was discharged by investigating whether the jury actually left the presence and control of the court. See, e.g., State v. Brandenburg, 38 N.J.Super. 561, 120 A.2d 59, 61 (Hudson County Ct.1956). In New Mexico, in a case where the jury was called back to the courtroom to correct a verdict one day after they were discharged, we stated that ‘[ajfter a verdict has been received and entered upon the minutes and the jury has been dismissed, they have not the power to reassemble and alter their verdict.’ Murry v. Belmore, 21 N.M. 313, 319,154 P. 705, 707 (1916). Despite this statement, we refused to set aside the corrected verdict because appellant’s attorney ‘purposely refrained’ from objecting to the reassembly of the jury in an apparent attempt to force a new trial for his client. Id, at 319-20, 154 P. at 707-OS.
“What remains unanswered in New Mexico law is: when is a jury actually discharged? The Court of Appeals held that a functional approach to answering the question was consistent with New Mexico law. Rodriguez, 2004-NMCA-125, 513, 136 N.M. 494, 100 P.3d 200. We agree with the Court of Appeals on this point. The functional approach to determining whether a jury has been discharged requires a determination of whether the jury is still in the presence and control of the trial court, and if not, whether the jury was possibly influenced by an unauthorized contact. See State v. Green, 995 S.W.2d 591, 609-613 (Tenn.Crim.App.1998) (reviewing cases from several jurisdictions). We find the analysis in Green persuasive. In Green, the court held that a verbal discharge or dismissal of the jury does not render the *929 jury discharged for purposes of subsequent reassembly to correct or amend a verdict. Id. at 609. Instead, the court considered two issues: (1) whether the jury was separated from the presence and control of the trial court; and (2) whether there was a possibility of outside contacts or influence on the jury. Id. at 612-13; see also Commonwealth v. Brown, 367 Mass. 24, 323 N.E.2d 902, 904-05 (1975) (holding reassembly permissible where jurors remained in control of the trial court by virtue of being in custody of court officers and had no opportunity for outside influence). An important query on the second issue is whether the record reflects that one or more jurors entered an area occupied by the general public.”
State v. Rodriguez, 139 N.M. at 452-53, 134 P.3d at 739-40. In Rodriguez, the jurors remained in the presence and control of the trial court and did not enter into an area occupied by the general public. The court concluded that, because no outside influence tainted the jury’s verdict, the entry of the verdict actually chosen by the jury was not constitutionally barred.
In Summers v. United States, 11 F.2d 583 (4th Cir.1926), the United States Court of Appeals for the Fourth Circuit held that there was no double-jeopardy violation where the jury had been discharged by the trial court after giving an additional charge to the jury outside the presence of the defendant and then recalling the jury, which entered the same verdict of guilt. In determining whether the jury had been discharged, the court stated:
“A discharge in such case may be effected without written or verbal order of the court. The duties of a jury ordinarily are presumed to be at an end when its verdict has been rendered, received, and published. If thereupon, with or without further positive direction of the court, it is allowed to disperse and mingle with the bystanders, with time and opportunity for discussion of the case, whether such discussion be had or not, the discharge of the jury becomes final, and its functions are at an end. Ordinarily, the effective discharge of a jury is evidenced by the announcement of that fact by the court, and it is perhaps not to be construed so much an order as a mere announcement of the fact by the court when it says to the jury, You are discharged.’ It is not so much what is said in passing as what is actually done and acted upon that determines the question of discharge. Without specific announcement, a jury may tacitly be permitted to retire and mingle with the bystanders after rendering its verdict, and thereby become effectively and irrevocably discharged. On the other hand, it may remain undischarged and retain its functions, though discharge may have been spoken by the court, if, after such announcement, it remains an undispersed unit, within control of the court, with no opportunity to mingle with or discuss the case with others, and particularly where, as here, the very case upon which it has been impaneled is still under discussion by the court, without the intervention of any other business.
“The case of Brister et al. v. State, 26 Ala. [107,] 132 [ (1855) ], is in point. There the verdict was received and read aloud in the absence of the defendants, and the jury was thereupon told by the court that they were discharged, and started out of the courtroom, but before they left the bar it was discovered that the prisoners were not present. Whereupon the court informed the jury that they were not discharged, the papers were returned to them, and the prisoners brought into court. The jury then, over objection, returned a verdict of con *930 viction, and this was sustained by the Supreme Court. To the same effect is the case of Levells v. State, 32 Ark. 585 [ (1877) ], in which it was held that where the jury has not separated, and as a body is still in the presence of the court, the order of discharge is still in the breast of the court, and may be recalled. See also Jackson v. State, 45 Ga. 198 [ (1872) ]; Grant v. State, 14 So. 757, 38 Fla. 291, 23 L.R.A. 723 [ (1894) ] and note at page. 732; Taggart v. Com., 46 S.W. 674, 104 Ky. 301, 20 Ky. Law Rep. 493 [ (1898) ]; Denham v. Com., 84 S.W. 538, 119 Ky. 508, 27 Ky. Law Rep. 171 [ (1905) ].”
Summers v. United States, 11 F.2d at 586-87. See also Cunningham v. State, 14 Ala.App. 1, 8-9, 69 So. 982, 985-86 (1915) (finding no error “in the court’s allowing the verdict to be completed and verified by the jury as their verdict after it had been read by the clerk, when it appears that the jury, although discharged, was called back by the court for the purpose of completing the verdict before leaving the courtroom”).
Here, the jury remained on the third floor of the courthouse between the time the judge announced that the members were discharged until the time the foreman informed the clerk that she had signed the wrong form. The jury members had not dispersed or conversed with outsiders. The jurors had remained in the hallway just outside the doorway of the courtroom, and the foreman immediately brought the mistake to the clerk’s attention. There was no evidence of any tampering with the members of the jury. Once the members were polled, they all confirmed the verdict as it had been intended. See 8 Wigmore, Evidence § 2355 at 717 (Chadbourn rev. 1981) (“The act of assent to a verdict is constituted by the express answer to the clerk at the polling in open court or by the silence which implies an assent. The outward act is final.” (emphasis omitted)). Therefore, there was no violation of T.D.M.’s double-jeopardy rights.[1]
II.
T.D.M. argues that the trial court erred by denying his motion for a continuance because the State failed to disclose records from the Department of Human Resources and medical reports. The record reveals that on August 13, 2007, defense counsel made a motion in chambers to dismiss the indictment and a motion to continue based on the State’s failure to have produced the records until that date. He submitted that he had previously filed a motion to continue in . order to obtain the Department of Human Resources records and that there was exculpatory evidence contained in the documents, so that there was a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[2] The prosecutor responded that there was nothing exculpatory in the documents and that the victim had been dealing with the offenses for almost two years. The trial court then questioned the prose *931 cutor concerning the availability of the witnesses who had examined or interviewed the victim and determined that the State had subpoenaed all of them. The trial court then ensured that T.D.M. was afforded the opportunity to examine and pursue the evidence as follows:
“THE COURT: What I will do is, allow him advance notice to at least talk with those witnesses, particularly Dr. Kidd [the family doctor] and Dr. White [the pediatrician], prior to them testifying, since he just got the records today. I’ve called Dr. White’s office and she was with a patient. She’s going to call the Court back to work out her schedule in terms of when she is planning to appear. I have not spoken with Dr. Kidd’s office. If y’all want to talk with Dr. Kidd’s office, we can take a break and do that and see when he’s planning to be here. I don’t know what time you-all are planning to call him.
“[Prosecutor]: Can we put all the doctors on call? And, if possible, we can probably have them here today because they were aware to be on call for today.
“THE COURT: I just want to at least give him a chance to be able to talk to them and go through the record with the information he has. Can we do that?”
(R. 8.)
The trial court denied T.D.M.’s motions, and voir dire commenced. (R. 12.) After the selection of the jury, the trial court recessed the proceedings until the morning of August 15, 2007. At that time, defense counsel affirmed that he had previously had most of the evidence of the interviews with the victim, and had since received the Department of Human Resources records. The trial court asked the parties if the proceedings were still going to be paused in order for defense counsel to talk to the expert witnesses before their testimony. Defense counsel responded that he wanted “about five minutes, at the most, with each one.” (R. 111.) The prosecutor confirmed the time at which the witnesses would be available, and defense counsel stated that he could talk to them before the jury returned. (R. 112.) The trial court then had the prosecutor confirm that the three witnesses named by T.D.M. would be present and available. Defense counsel then stated, “[T]hat was the only problem we had before, Judge, making sure those ... witnesses were here.” (R. 112.)
The record reveals that T.D.M. acquiesced in the trial court’s actions to allow him to interview the witnesses and examine the documents. See Brown v. State, 11 So.3d 866, 882 (Ala.Crim.App.2007), affirmed, Ex parte Brown, 11 So.3d 933 (Ala.2008), cert. denied, Brown v. Alabama, — U.S. -, 129 S.Ct. 2864, 174 L.Ed.2d 582 (2009) (“The record shows that this matter was resolved to defense counsel’s satisfaction. Thus, if any error occurred it was invited by defense counsel’s conduct.”). See also Snyder v. State, 893 So.2d 488, 518 (Ala.Crim.App.2003) (“Both parties agreed with the trial court’s handling of the situation. Therefore, if error did occur it was invited by Snyder’s own conduct.”).
Here, there is no evidence of suppression by the State, nor is there any indication of prejudice suffered by T.D.M. on this ground. T.D.M. acquiesced in the trial court’s actions to allow him access to the evidence concerning the expert examinations and interviews of the victim. Therefore, the trial court did not abuse his discretion in denying T.D.M.’s motions.
III.
T.D.M. argues that the trial court committed reversible error by allowing improper opinion testimony, which, he says, bolstered the victim’s credibility and denied him a fair trial. T.D.M. specifically refers to six instances of testimony that he *932 alleges provided the witnesses’ opinions that the victim was telling the truth. The particular testimony includes statements of the victim’s mother that she believed in her heart that the victim was telling the truth, and her testimony that the victim was loving and obedient; the testimony of the investigator from the Department of Human Resources that the Department’s investigation had found that the sexual abuse alleged by the victim had occurred; the family physician’s testimony that the victim was a “reliable historian”; a State’s witness’s testimony that she “believed her”; and the pediatrician’s testimony concerning the veracity of child victims in general in reporting allegations of sexual abuse.
The record indicates that T.D.M. raised specific objections other than bolstering the victim’s credibility as to a number of these statements or generally objected without specifying grounds. He objected to the testimony by the victim’s mother that the child was loving as improper character evidence. (R. 324.) He objected to the mother’s statement that she believed in her heart that the victim was being truthful without specifying any ground other than repeating the witness’s language. (R. 322.) He objected to the pediatrician’s statement concerning the veracity of child victims in general by challenging the witness’s expertise as to the truthfulness of child victims. (R. 311— 13.) He objected to the Department of Human Resources worker’s testimony as improper opinion testimony, apparently concerning the ultimate issue, rather than as improper bolstering. (R. 283-84.)
“ ‘ “To preserve an issue for appellate review, the issue must be timely raised and specifically presented to the trial court and an adverse ruling obtained.” Mitchell v. State, 913 So.2d 501, 505 (Ala.Crim.App.2005). The purpose of requiring an issue to be preserved for review is to allow the trial court the first opportunity to correct any error. See, e.g., Ex parte Coulliette, 857 So.2d 793 (Ala.2003).’ ”
Ex parte Malone, 12 So.3d 60, 66 (Ala.2008). T.D.M. did not properly object so as to preserve these comments for review.
As to the testimony of the State’s witness that she believed the victim, defense counsel moved for a mistrial following the comment, and the trial court instructed the jury as follows:
“THE COURT: Ladies and gentlemen, you are to disregard the last statement from the witness as to whether or not she believed what the young lady said.
“That’s not relevant.
“No, ma’am, you are not to say that.
“THE WITNESS: I’m sorry.
“THE COURT: It’s stricken from the record.”
(R. 191-92.) T.D.M. made no further objection or motion.
The trial court’s instructions to the jury to disregard the comment were sufficient to cure any error.
“A motion for a mistrial implies a miscarriage of justice and should only be granted where it ii apparent that justice cannot be afforded. Young v. State, 416 So.2d 1109 (Ala.Cr.App.1982). A trial judge is allowed broad discretion in determining whether a mistrial should be declared, because he is in the best position to observe the scenario, to determine its effect upon the jury, and to determine whether the mistrial should be granted. Woods v. State, 367 So.2d 982 (Ala.1978); Duncan v. City of Birmingham, 384 So.2d 1232 (Ala.Cr.App.1980); Wadsworth v. State, 439 So.2d 790 (Ala.Cr.App.1983), cert. denied, *933 Wadsworth v. Alabama, [466] U.S. [930], 104 S.Ct. 1716, 80 L.Ed.2d 188 (1984).
“The granting of a mistrial is an extreme measure, and a mistrial should be denied where the prejudicial qualities of the comment can be eradicated by the action of the trial court. Young, supra; Dickey v. State, 390 So.2d 1177 (Ala.Cr.App.), cert. denied, 390 So.2d 1178 (Ala.1980).”
Dixon v. State, 476 So.2d 1236, 1240 (1985).
“ ‘There is a prima facie presumption against error when the trial court immediately charges the jury to disregard improper remarks or answers.’ Garrett v. State, 580 So.2d 58, 59 (Ala.Crim.App.1991).” Walker v. State, 932 So.2d 140, 153 (Ala.Crim.App.2004), affirmed, Ex parte Walker, 972 So.2d 737 (Ala.2007). “Where the trial court immediately instructs the jury not to consider a fact, that instruction, in effect, removes or excludes that matter from the jury’s consideration, and the prejudicial effect of the statement is deemed to be cured by such instruction.” Soriano v. State, 527 So.2d 1367, 1371 (Ala.Crim.App.1988). Here, the trial court removed any impropriety in the witness’s remark from the jury’s consideration.
As to the testimony of the family doctor, although T.D.M.’s objection chiefly addressed the physician’s expertise to adjudge the victim’s reliability, defense counsel did state during his objection that the witness was “improperly bolstering the testimony of the witness.” (R. 198.) However, the physician’s testimony was that he found the child to be “a reliable historian. She was interactive, she was tearful, and she was appropriate.” (R. 197.) This testimony was not introduced to bolster the victim’s credibility, but rather as an explanation of the results of his examination. The documents concerning this examination were also introduced as Defendant’s Exhibit One without objection. (R. 7, 217.) See E.W. v. Jefferson County Dep’t of Human Res., 872 So.2d 167, 170-71 (Ala.Civ.App.2003) (admission of DHR Exhibit 4 was harmless as it was cumulative of other evidence). There was no error as a result of this testimony by the physician. Cf. Ex parte Hill, 553 So.2d 1138 (Ala.1989) (finding no merit to Hill’s argument that the social worker’s testimony vouched for the credibility of the adolescent prosecutrix by discussing her recantation).
Thus, T.D.M.’s claims concerning improper bolstering of the victim’s credibility through witnesses’ testimony are precluded or without merit.
Based on the foregoing authority, the judgment is due to be affirmed.
AFFIRMED.
WISE, P.J., and WELCH and KELLUM, JJ., concur. WINDOM, J., concurs in the result.

. See also Lamb v. State, 113 So.3d 677 (Ala.Crim.App.2010). Lamb appealed from the denial of a Rule 32 petition; this Court determined that circuit court’s application of the procedural bars in Rule 32.2 to deny the petition for postconviction relief was appropriate because, based on the facts of that case, the trial court’s actions regarding the jury verdict were permissible as correcting a clerical error pursuant to Rule 29, Ala.R.Crim.P.

. The Department of Human Resources had previously filed a motion for a protective order concerning the victim’s records, and the court ordered that the records be produced for an in camera review. When the Department of Human Resources did not respond, T.D.M. filed another motion to continue and the court ordered on August 3, 2007 that the records be forwarded to T.D.M.